# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 6887 | **DATE** | 10/5/2012 |
| **CASE TITLE** | Allison vs. Gallagher, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, the Court denies Defendants' motion to bifurcate [38].

■[ For further details see text below.]

Docketing to mail notices.
*Copy to judge/magistrate judge.

## STATEMENT

### I. Background

This matter arises out of Plaintiff Antonio Allison's detention at the Cook County Jail ("CCJ") in October 2009. Plaintiff alleges that on October 31, 2009, he was making a phone call when several other detainees gained access to the deck and began to attack Plaintiff with shanks. Plaintiff alleges that Defendants failed to adequately protect him during this encounter. In his complaint, Plaintiff asserts individual § 1983 claims against Defendants for deliberate indifference and failure to protect and state law claims of intentional infliction of emotional distress, respondeat superior, and indemnification. Plaintiff also asserts a *Monell* claim against the Sheriff of Cook County for allegedly allowing a widespread practice to exist, contributing to Plaintiff's injuries. Currently before the Court is Defendants' motion to bifurcate Plaintiff's § 1983 claims against the County pending the resolution of claims against the individual Defendants and to stay discovery on claims involving Cook County's customs and policies related to the operation of CCJ.

### II. Analysis

Federal Rule of Civil Procedure 42(b) authorizes federal courts to order a separate trial of one or more separate issues or claims if separation (or bifurcation) is warranted "[f]or convenience, to avoid prejudice, or to expedite and economize." Bifurcation may be appropriate if one or more of the Rule 42(b) criteria is met. See, *e.g.*, *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). District courts approach bifurcation motions with a pragmatic mindset, and the district court's exercise of its "'considerable discretion to order the bifurcation of a trial'" will be set aside on appeal "'only upon a clear showing of abuse.'" *Id*. at 364-64 (quoting *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000)).

Motions to bifurcate *Monell* claims are now commonplace, and "[c]ourts in our district have both granted and

**STATEMENT**

denied similar motions." *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *1 (N.D. Ill. July 16, 2008). "Thus, there is a growing body of precedent in this district for both granting and denying bifurcation in § 1983 cases" (*Elrod v. City of Chicago*, 2007 WL 3241352, at *2 (N.D. Ill. Nov. 1, 2007)), with the result in each instance "reflect[ing] a case-specific assessment of the advantages and disadvantages of bifurcation." *Ojeda-Beltran*, 2008 WL 2782815, at *1.

The spate of bifurcation motions and the willingness of many judges to grant them stems in large part from the recognition that, in many instances, "claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them." *Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007); see also *Ojeda-Beltran*, 2008 WL 2782815, at *2 (noting that litigating plaintiffs' *Monell* claim will be a "more burdensome and time-consuming task" than litigating plaintiffs' claims against the individual officer defendant). Here, the claims against the County alleged in Plaintiff's complaint refer to a sufficiently wide-ranging set of potentially relevant policies and practices that the concerns in *Moore* and *Ojeda-Beltran* are present here as well. Not only does Plaintiff allege a widespread practice by the Sheriff to utilize cell doors and locks that allow of the use of blocks or "caps," Plaintiff also alleges a widespread practice of generally violating inmates' rights and failing to adequately punish, discipline, supervise, and control officers at CCJ. The potential discovery related to these various topics could be extensive and expensive, as has been the case in several recent § 1983 lawsuits before this Court.

However, Plaintiff assures the Court that this should not be the case. Plaintiff states that this case "does not involve extensive document production" and that *Monell* discovery likely will involve "only a few depositions of supervisory personnel involved in the compilation or review of those reports and related documents." These representations allay the Court's concerns about the burden and scope of *Monell* discovery at this time.

Furthermore, Plaintiff correctly points out that municipal liability may be found even in the absence of underlying individual liability. See *Thomas v. Cook County Sheriff's Dept.*, 588 F.3d 445, 456 (7th Cir. 2009) (holding that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict."). Without opining on the merits of Plaintiff's claims, the Court agrees that the facts in this case tend to support Plaintiff's position that municipal liability could be found even in the absence of underlying individual liability. Indeed, Plaintiff's *Monell* claim may be stronger than his individual claims.

The County contends that staying discovery will avoid potential discovery disputes, an argument that assumes either that *Monell* discovery would never occur or that deferring it will somehow simplify the issues involved at a later date. Plaintiff counters this argument by claiming that disputes are already on the horizon and that some *Monell* evidence could overlap with what is relevant to the individual defendants. Some courts have denied bifurcation because it could complicate the discovery process by requiring additional determinations as to whether some *Monell* evidence might be relevant to individual liability (see *Terry*, 2010 WL 2720754, at *3), while others have not found this to be a ground for staying discovery (see *Clarett*, 2011 WL 37838, at *3 (denying bifurcation but staying *Monell* discovery)). Here, if *Monell* discovery unfolds as Plaintiff anticipates, there should be few, if any, discovery disputes. Moreover, should any such disputes materialize, the Court may enlist the assistance of Magistrate Judge Rowland to supervise the discovery process and assist in resolving those disputes.

The County also contends that failing to bifurcate the *Monell* issues or to stay discovery could prejudice the individual Defendants. The County argues that the introduction of evidence relevant to claims against the County could unfairly sway a jury's decision against the individual Defendants. The Court agrees that it will be

**STATEMENT**

important to monitor any potential prejudice to the individual Defendants as the individual liability and *Monell* claims proceed simultaneously, but concludes that any concerns about bifurcation *at trial* are premature at this time. Once it becomes clear which, if any, of Plaintiff's claims will proceed to trial, the Court will reevaluate whether a single trial or a bifurcated trial makes more sense at that time. The denial of the motion to bifurcate therefore is without prejudice to being renewed, either by a party or on the Court's own motion.

In sum, on the basis of Plaintiff's representations regarding the anticipated scope of *Monell* discovery, the Court concludes that bifurcation is not warranted at this time. With that said, the Court recognizes the toll that *Monell* discovery sometimes takes on § 1983 litigation, as well as on the parties' willingness and ability to settle claims that otherwise may well lend themselves to resolution short of trial. Because litigation of *Monell* claims often is labor intensive for attorneys, lawyer and client sometimes find themselves at odds over the relative cost-benefit analysis when considering settlement offers after engaging in extensive *Monell* discovery. These concerns are widely shared among judges. To borrow from Judge Moran's helpful summary:

> [W]e are often unsure of the impetus behind alleging *Monell* claims in cases such as this one. * * * [C]laims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them. But to what end? If the plaintiff prevails against the officer on a § 1983 claim, he or she is not likely to want or need to proceed any further, at least in this district and state. An Illinois statute directs local governments to pay tort judgments for compensatory damages for which its employees are liable, see 745 ILCS 10/9-102; the Seventh Circuit has held that this statute permits the § 1983 plaintiff to bring a claim directly against the municipality and obtain a judgment requiring the municipality to pay the amount due to the plaintiff from the officer. Nor do we believe the municipality is more likely to be deterred when sued in its own capacity given that *Monell* claims rarely make it to trial. Furthermore, even if the city is found liable, punitive damages are not an available remedy.

*Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007) (citations omitted). Limiting the initial phase of cases to the litigation of only those claims that may afford a plaintiff whatever monetary compensation he may be entitled often justifies the granting of a motion to bifurcate *Monell* claims. Nevertheless, based on Plaintiff's representations in his response to Defendants' motion, the Court concludes that the concerns articulated above likely can be avoided in this case. If the Court's surmise proves to be mistaken – that is, if *Monell* discovery proves too unwieldy or if the benefits of proceeding with the *Monell* claims are outweighed by the costs to the fair and efficient management of this case – the Court may revisit the issue of bifurcation, either on the motion of a party or on its own motion.

**III.    Conclusion**

For the reasons stated above, the Court concludes that bifurcation is not warranted at this time and accordingly denies Defendants' motion to bifurcate [38] without prejudice.